UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**RAYMOND JAMES HOSLETT**,                    Civil Case No. 3:11-CV-00674-KI

       Plaintiff,

                        OPINION AND ORDER

          v.

**JASPAL DHALIWAL, M.D., RAYMOND WESTERMEYER, M.D.,** and **UNITED STATES**,

       Defendant.


Judy Danielle Snyder
1000 SW Broadway, Suite 2400
Portland, Oregon  97205

      Attorney for Plaintiff


Page 1 - OPINION AND ORDER

Eric J. Neiman
Rachel A. Robinson
Williams, Kastner & Gibbs PLLC
888 SW Fifth Avenue, Suite 600
Portland, Oregon  97204-2025

     Attorneys for Defendant Raymond Westermeyer, M.D.

KING, Judge:

Plaintiff Raymond James Hoslett alleges prison staff at FCI Sheridan failed to properly treat his debilitating bladder disease and associated pain.  He alleges claims under the Eighth Amendment and the federal and Oregon tort claim acts.  Before the court are Defendant Dhaliwal's Motion for Summary Judgment [45] and Defendant Westermeyer's Motion for Summary Judgment [123].  As explained below, I deny both motions.

### FACTS

At all relevant times, Hoslett was an inmate at FCI Sheridan and Dr. Dhaliwal was an employee of the Bureau of Prisons.  Dr. Westermeyer was a contract physician with the Bureau of Prisons, so FCI Sheridan's Clinical Director, Dr. Davis, had to review and co-sign his chart notes.  If Dr. Davis was not onsite, Dr. Dhaliwal reviewed and co-signed Dr. Westermeyer's chart notes.

Hoslett was first incarcerated at FCI Herlong and then moved to FCI Sheridan when he was redesignated as a Medical Care Level II inmate.  While at FCI Herlong, Hoslett was diagnosed with interstitial cystitis.  He complained of constant pain, generally at a level of eight out of ten, hesitancy, and frequent urination at night.  A urologist performed a surgical procedure called cystoscopy with hydrodistention and then prescribed Elmiron, 100 milligrams, twice daily.

Page 2 - OPINION AND ORDER

Hoslett was transferred to FCI Sheridan on April 14, 2010.[1]  The transfer paperwork stated that all medications should be continued until Hoslett was evaluated by a physician, unless otherwise indicated.  RN Francis screened him on arrival and entered into the medical record that Hoslett should remain on Elmiron, per Dr. Dhaliwal's verbal order.  The next day, Dr. Dhaliwal discontinued Hoslett's prescription for Elmiron without physically examining him.  The doctor had never treated a patient with interstitial cystitis prior to Hoslett and had never prescribed or monitored Elmiron.  He discontinued the prescription because he wanted to talk to Hoslett, order new labwork, and check on any side effects or interactions with other medications.  At that time, Hoslett was not taking any other medication.  Dr. Dhaliwal explained he discontinued the Elmiron because he was not knowledgeable about treatment with that medication.

On April 16, Hoslett sent an Inmate Request to the medical department explaining his interstitial cystitis diagnosis and urologist's advice to take Elmiron for the rest of his life.  The response explained Hoslett was scheduled to see a doctor soon and could discuss the issue then.

On April 20, six days after Hoslett's transfer, Dr. Dhaliwal examined Hoslett for the first time and restarted the Elmiron, 100 milligrams, twice daily.

On May 20, Dr. Dhaliwal examined Hoslett for complaints of intense pain.  The day before, Hoslett told the nurse practitioner that he had aching pain, at eight out of ten, in the suprapubic region with occasional sharp pains radiating into the tip of his penis.  On June 1, the Utilization Review Committee approved Hoslett being examined by Dr. Dutta, a urologist in the community.

---

[1]  All dates are in 2010 unless otherwise specified.  Furthermore, the medical record is extensive.  I describe below some, but not all, of the examinations.

Dr. Dutta examined Hoslett on July 21.  He recommended increasing the Elmiron dosage from 100 milligrams twice a day to 200 milligrams three times a day and possibly performing another cystoscopy and hydrodistention.  Dr. Dutta copied his report to Dr. Dhaliwal, but Dr. Dhaliwal did not review the report.  Instead, Dr. Davis reviewed it on August 9.  According to Dr. Westermeyer, the duty officer should have contacted medical personnel at the prison to reconcile Dr. Dutta's medication change when Hoslett returned from the appointment.  This did not happen.

Dr. Westermeyer met with Hoslett on August 11 to discuss treatment options. Dr. Westermeyer then spoke to Dr. Dutta later the same day.  During the conversation, Dr. Dutta did not recommend that Dr. Westermeyer either consider referring, or actually refer, Hoslett to a pain specialist.  Dr. Westermeyer's chart note states:

> Discussed with Urologist Dr. Dutta (sp?).  He has not much to offer.  Can do bladder dilation and see if it helps.  Could try antispasmodics, usually not very helpful.  He never uses narcotics for this.  He sometimes refers to pain specialists, just because he doesn't want to manage the pain meds in his practice.

Westermeyer Decl. Ex. A, at 3.

Dr. Westermeyer saw Hoslett on August 18 and refused to prescribe narcotic pain medication.  Hoslett does not recall Dr. Westermeyer explaining his reasons for the refusal. Dr. Westermeyer believed narcotic pain medication was contraindicated because it would better serve Hoslett to treat the underlying condition and narcotics lose their effectiveness over time and cause worsening side effects, including contributing to more sensations of pain.

Dr. Westermeyer did not refer Hoslett to a pain specialist because he thought it was extremely unlikely for a pain specialist to have any treatment suggestions not considered by Dr. Dutta and

himself.  He did prescribe oxybutynin, an antispasmodic which Hoslett never took because Dr. Dutta told him it would not be very helpful.  Dr. Westermeyer also started the approval process for Hoslett to undergo a cystoscopy with hydrodistention.  After approval, all medical procedures to be performed outside the prison are set up by a scheduling nurse, and not Dr. Westermeyer.  The prison can only transfer a few inmates a day so there is often a wait for non-life threatening conditions.

Dr. Dhaliwal had little active involvement in Hoslett's treatment after May 20; Dr. Westermeyer was the primary provider after that date, along with treatment by the specialist, Dr. Dutta.  There are two exceptions.  First, Dr. Dhaliwal co-signed, and Dr. Davis reviewed, Dr. Westermeyer's September 14 chart note stating Hoslett was bitterly unhappy with not getting relief from a constant state of pain and inability to sleep due to frequency of urination at night. The chart note also explained a urology consultation was being scheduled.  Second, on November 2, Dr. Dhaliwal reviewed a consultation form sent by Dr. Dutta after he (Dr. Dutta) examined Hoslett on October 26.  In the form, Dr. Dutta noted he would schedule Hoslett for a cystoscopy with hydrodistention and bladder biopsy, the prison should consider referral to a pain specialist, and he asked the prison to do a PSA level and send him the result.  Dr. Dhaliwal ordered the PSA test on November 2, but did not examine Hoslett.

On October 15, Dr. Davis ordered the increased dosage of Elmiron originally prescribed by Dr. Dutta on July 21.

Hoslett was first transported for surgery on October 26, but no anesthesiologist was available at the hospital, so he returned to the prison.

On November 29, Dr. Westermeyer emailed the scheduling nurse to ask if Hoslett's procedure could have increased priority: "[Hoslett] is really eager to try this therapy, and I think given the circumstances, and his dramatic improvement in cooperation, it would be appropriate to schedule him as soon as possible and not have him go to the back of the line all over again." Snyder Decl. Ex. 40.

Hoslett finally had the surgery on December 28. Dr. Dutta prescribed 30 tablets of 5 milligrams oxycodone for pain with instructions to take 1 to 2 tablets every 3 hours as needed. When Hoslett returned to the prison, a nurse practitioner reconciled this prescription with the prison regulations which allow distribution of narcotics twice a day, and ordered 5 milligrams of oxycodone, twice a day. Dr. Westermeyer reviewed the nurse practitioner's order the next morning and concluded it was insufficient. He increased the medication order on December 29 to 10 milligrams of oxycodone, twice a day for 3 days, in an extended release form which would last twelve hours. Hoslett did not request a refill of the oxycodone after the three days.

Dr. Dhaliwal and Dr. Westermeyer both left FCI Sheridan in March 2011 and had no further involvement with Hoslett. In June 2011, Hoslett was prescribed oxycodone, morphine sulfate, and gabapentin, along with the Elmiron, and Dr. Dutta performed another cystoscopy with hydrodistention in May 2012. Hoslett has remained on narcotics since June 2011.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine dispute of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate

through the production of probative evidence that there remains a fact dispute to be tried.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the

court "must view the evidence on summary judgment in the light most favorable to the

non-moving party and draw all reasonable inferences in favor of that party." Nicholson v.

Hyannis Air Serv., Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (internal quotation omitted).

## DISCUSSION

I.    Scope of the Eighth Amendment Claim

Hoslett filed the Amended Complaint pro se before the current pro bono counsel agreed

to represent him. In the Eighth Amendment claim, Hoslett alleges defendants were deliberately

indifferent to his serious medical need and inflicted pain on him by failing to follow all of

Dr. Dutta's orders for pain medication from October 26, 2010 through June 16, 2011.

Defendants ask the court to limit the Eighth Amendment claim to this conduct and time period.

Pro bono counsel's response also discusses other conduct, including Dr. Dhaliwal's

change to Hoslett's Elmiron prescription on arrival at FCI Sheridan and both defendants' failure

to refer Hoslett to a pain specialist, as Dr. Dutta suggested.

Even though pro bono counsel began representing Hoslett the following month, he filed

the Amended Complaint pro se. The court must construe pro se complaints liberally.

Engebretson v. Mahoney, 724 F.3d 1034, 1037 (9th Cir. 2013). Moreover, Hoslett loaded the

Amended Complaint with numerous facts in response to my instructions after I granted a motion

to dismiss for failure to state a claim. If Hoslett had merely pleaded that defendants violated the

Eighth Amendment by showing extreme indifference during the treatment of his interstitial

cystitis and associated pain, he would have satisfied the notice pleading requirement and alleged

a broad claim without date or conduct limitations.  I will allow Hoslett to litigate his claims against defendants for all of their conduct from when Hoslett was transferred to FCI Sheridan to when defendants left the facility.

II.    Dr. Dhaliwal

Dr. Dhaliwal contends his actions do not rise to the level of deliberate indifference, and he is entitled to qualified immunity.  He seeks summary judgment against Hoslett's Eighth Amendment claim.  When actively involved in Hoslett's treatment, Dr. Dhaliwal prescribed Elmiron and referred Hoslett to Dr. Dutta.  Dr. Dhaliwal argues he did not examine or treat Hoslett after May 20 and was not responsible for implementing the course of treatment prescribed by Dr. Dutta.

Further, Dr. Dhaliwal claims he cannot be liable for the care documented in the records he reviewed after May 20 because Dr. Westermeyer was making medical decisions based on his own informed judgment.  In the records, Dr. Dhaliwal could see Hoslett was still being referred to Dr. Dutta, a urologist, who scheduled him for the surgery that brought relief before Hoslett came to FCI Sheridan.  Dr. Dhaliwal argues there is no evidence he was deliberately indifferent by failing to override Dr. Westermeyer's judgment.

Hoslett argues Dr. Dhaliwal was deliberately indifferent to his medical condition and pain.  Hoslett notes Dr. Dhaliwal discontinued the Elmiron prescription on April 15 before examining Hoslett.  He also claims Dr. Dhaliwal participated in his treatment after May 20.  In support, Hoslett relies on Dr. Dhaliwal's reviews of Dr. Westermeyer's September 14 chart note and Dr. Dutta's October 26 consultation form.  Hoslett alternatively argues Dr. Dhaliwal is liable as a supervisor because of his own inaction.

Page 8 - OPINION AND ORDER

To determine whether a government employee is entitled to qualified immunity, the court uses a two-part test:  (1) the court "must determine whether, viewed in the light most favorable to the plaintiff, the government employee violated the plaintiff's constitutional rights"; and (2) the court "must also determine whether the rights were clearly established at the time of the violation."  Friedman v. Boucher, 580 F.3d 847, 852 (9th Cir. 2009).

The Eighth Amendment is violated if prison officials are deliberately indifferent to a prisoner's serious medical needs.  Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012). "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent."  Id. (internal quotation omitted).  To prove deliberate indifference, a prisoner must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and "harm caused by the indifference."  Id.  Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  Id. (internal quotation omitted).  The harm does not have to be substantial.  Id.

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  Thus, a plaintiff's showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference.

Id. (internal quotations and citations omitted).

Dr. Dhaliwal does not argue Hoslett did not have a serious medical need.  I will turn to the second prong of the test–whether Dr. Dhaliwal showed deliberate indifference when treating Hoslett.  I conclude a jury could find that Dr. Dhaliwal was deliberately indifferent and interfered with Hoslett's medical treatment by discontinuing the Elmiron prescription when Hoslett transferred to FCI Sheridan, and did so without examining or speaking to Hoslett or speaking to the doctor who had prescribed the medication at FCI Herlong.  The fact that Dr. Dhaliwal was not knowledgeable about using Elmiron to treat interstitial cystitis is not evidence of a difference of opinion regarding a medical judgment.  Moreover, four days later, Dr. Dhaliwal restarted the prescription.  See Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (allegations support a finding that prison officials intentionally interfered with inmate's previously prescribed medical treatment by failing to provide a liquid diet ordered by the hospital when inmate returned from hospital with jaw wired shut to treat a fracture).  There is no direct evidence that Hoslett suffered increased pain when Dr. Dhaliwal discontinued the medication, but the evidence of his pain and eventual surgery, even when taking the medication, and his Inmate Request asking the staff to keep him from running out of the medication, are sufficient to infer he was harmed.

There is no need to address the supervisor liability issue at this time.  Furthermore, I am not limiting the Eighth Amendment claim to the discontinuation of Elmiron.  I address that issue alone because it is a sufficient basis to rule on the pending motion.  I deny Dr. Dhaliwal's motion for summary judgment against the Eighth Amendment claim.

II.     Dr. Westermeyer

    A.     Eighth Amendment Claim

Dr. Westermeyer argues Hoslett cannot prove deliberate indifference because the record shows the doctor acted based on reasoned medical judgment, including his refusal to prescribe narcotics to combat Hoslett's chronic pain. According to Dr. Westermeyer, the oxycodone prescription from Dr. Dutta immediately after Hoslett's surgery had to be modified because it did not comply with prison regulations. Dr. Westermeyer contends there is no evidence that when he examined Hoslett on August 11, he was aware of and purposely ignored Dr. Dutta's increase of the Elmiron dosage. The doctor argues there is no evidence Hoslett suffered any harm from Dr. Westermeyer's treatment because Hoslett continued to have severe pain after Dr. Davis increased the Elmiron dosage on October 15 and eventually prescribed narcotics for chronic pain in June 2011.

Hoslett contends Dr. Westermeyer did not appropriately treat his severe pain, whether the pain is labeled as chronic or acute. He claims Dr. Westermeyer based the treatment decisions on his unreasonable conclusion that Hoslett was an uncooperative patient, and thus showed deliberate indifference to Hoslett's ongoing debilitating pain.

I first note the parties are arguing about nuances in the medical record, a record which is extensive. Such arguments make me wary about granting summary judgment. As with Dr. Dhaliwal, I will focus on a single incident, but I do not limit Hoslett's claim in doing so. Dr. Dutta increased Hoslett's Elmiron dosage significantly on July 21 but Dr. Westermeyer did not order the increase even though he examined Hoslett twice in August and once in September. Dr. Davis finally ordered the increase on October 15. Dr. Westermeyer argues he was not

Page 11 - OPINION AND ORDER

deliberately indifferent because he was unaware of the increase, which should have been reconciled by the duty officer on July 21.  At this stage of the proceedings, however, Hoslett is entitled to an inference that Dr. Westermeyer knew of Dr. Dutta's order when Dr. Westermeyer reviewed Hoslett's records during the three examinations before Dr. Davis finally prescribed the increase.  See Jett v. Penner, 439 F.3d 1091, 1097 (9th Cir. 2006) (inmate is entitled to inference that prison doctor was aware of the community hospital's written aftercare instructions in his medical record to have an orthopedist recheck the inmate's fractured thumb within the next few days).  A jury could find that knowledge of the increase, and failing to address it in any way based on a reasoned medical judgment, is interference with medical treatment sufficient to establish deliberate indifference.

There is also evidence on which Hoslett could argue Dr. Westermeyer's decisions were based to some extent on his conclusion that Hoslett was a difficult, uncooperative patient, who was insisting on narcotics when no doctor would prescribe them.  Eventually, Hoslett was put on narcotics at the prison for control of chronic pain.

Consequently, I deny the motion for summary judgment against the Eighth Amendment claim.

B.    Medical Malpractice Claims

When causation in a malpractice claim involves a complex medical question, a plaintiff must establish causation through expert testimony that "there is a reasonable medical probability that the alleged negligence caused the plaintiff's injuries."  Pinkerton v. Tri-County Metro. Serv. Dist., 203 Or. App. 525, 530,  125 P.3d 840 (Or. App. 2005).  Dr. Westermeyer seeks summary judgment against the federal and state medical malpractice claims, arguing Hoslett's expert does

not opine that his alleged negligence caused Hoslett any harm to a reasonable degree of medical probability.

I will assume Hoslett's claim involves a complex medical question.

Hoslett's expert is Dr. Moulsdale, a board certified urologist. Dr. Moulsdale opines Dr. Westermeyer failed to meet the standard of care by refusing to prescribe narcotic pain medication despite Hoslett's continued complaints of severe and chronic pain, by refusing to refer Hoslett to a pain specialist as recommended by Dr. Dutta, by failing to increase Hoslett's prescription for Elmiron as recommend by Dr. Dutta, and by altering Dr. Dutta's prescription for oxycodone following the December 28 surgery.

It is true Dr. Moulsdale did not explicitly state that Dr. Westermeyer's conduct caused Hoslett any harm to a reasonable degree of medical probability. Throughout the record, however, Hoslett complained over and over of severe pain. Three of the four particular types of conduct Dr. Moulsdale concludes failed to meet the standard of care directly relate to the treatment of pain. This is not a situation where the causal link is complicated–failure to treat severe pain leaves the patient in severe pain. Consequently, I find Dr. Moulsdale's declaration is adequate to create a factual issue, and I do not grant summary judgment against the medical malpractice claims.


///


///


Page 13 - OPINION AND ORDER

## CONCLUSION

Defendant Dhaliwal's Motion for Summary Judgment [45] and Defendant Westermeyer's Motion for Summary Judgment [123] are denied.  The court will hold a telephone conference to schedule a trial date.

IT IS SO ORDERED.

Dated this _____23rd_____ day of April, 2014.

_____/s/ Garr M. King_____
Garr M. King
United States District Judge